UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY CARROLL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.  4:18-cv-1945-RWS |
| | ) | |
| STANLEY PAYNE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This case is before me on Petitioner Anthony Carroll's application for a writ of habeas corpus under 28 U.S.C. § 2254. Carroll raises two grounds for relief. First, he argues that the state trial court erred by failing to *sua sponte* excuse a juror. Second, he argues that the imposition of a 160-year prison sentence violated the Eighth Amendment because it was grossly disproportionate to his crimes and arose from the trial judge's personal animus. After careful consideration, I will deny Carroll's petition for the reasons set forth below.

## BACKGROUND

In 2005, Carroll was convicted by a jury in St. Louis Circuit Court. He was charged with one count of first-degree robbery, two counts of forcible sodomy, three counts of armed criminal action, two counts of first-degree burglary, and one count of misdemeanor stealing.

Following the close of evidence but prior to closing arguments, a juror ("Juror S") informed a deputy of the court that his father worked for the U.S. Attorney's Office in the Eastern District of Missouri. [ECF No. 11-1 at 413]. Upon learning this information, the court questioned Juror S about his ability to be fair and impartial to both the State of Missouri and the defendant. [Id. at 413-14]. Juror S indicated that he could be fair and impartial. [Id. at 414]. The court then gave the prosecutor and defense counsel the opportunity to ask follow-up questions. [Id.]. Neither the prosecutor nor defense counsel asked any questions or raised any concerns about Juror S remaining on the jury. The court did not remove Juror S from the jury. [Id.].

The State submitted the case to the jury, which found Carroll guilty on all counts except for one count of first-degree burglary. Immediately prior to sentencing, the trial judge made the following remarks on the record:

> Mr. Carroll, during the trial, I was baffled during cross-examination. The prosecutor asked you whether you were a homosexual and you were upset. You told him no. I believe your words were you were not a fag. I've consulted some of my friends that are homosexuals and they want me to let you know, whether or not you're the giver or the givee, if you have forced a heterosexual man to suck your penis and you're so gratified that you take him and put him in the bed and have anal sex with him, you are a fag.

[Id. at 456].

No objections were raised in response to these comments. The trial court then sentenced Carroll to 160 years in prison. [Id. at 458].

Carroll appealed his conviction. The Missouri Court of Appeals issued its

mandate on December 28, 2006. <u>State v. Carroll</u>, 207 S.W.3d 140 (Mo. Ct. App. 2006). The Court of Appeals affirmed Carroll's convictions and sentences but remanded the case to correct a clerical error.[1] The court concluded that both of Carroll's alleged grounds for relief were procedurally barred and found that the trial court's determinations were not the result of plain error. [ECF No. 11-5 at 12-13, 16-17].

On November 15, 2007, Carroll filed a pro se Rule 29.15 motion for post-conviction relief. [ECF No. 11-15 at 4]. The motion court appointed post-conviction counsel on August 20, 2010 and granted counsel an extra thirty days to file an amended motion. [Id.]. On October 19, 2010, counsel filed Carroll's amended Rule 29.15 motion, which included Carroll's ineffective assistance of counsel claims as well as the allegation that Carroll had previously mailed a pro se Rule 29.15 motion to the court on March 16, 2007. [Id.]. The court apparently lost the majority of the filing. [Id.]. According to the amended complaint, Carroll only filed the November pro se motion because he had still not received any updates about the March motion. [Id. at 4-5].

The State argued that Carroll's motions were untimely, since more than ninety

---

[1] The trial court had neglected to mark a box on the sentence and judgment form memorializing its finding that Carroll was a prior and persistent offender. However, the Missouri Court of Appeals later noted that the trial court had not made a mistake and had intended to sentence Carroll as only a prior offender. <u>See</u> <u>Carroll v. State</u>, 461 S.W.3d 43, 45 n.2 (Mo. Ct. App. 2015) ("The record reflects, however, that the judge's oral pronouncement and the court's written judgment find Carroll to be a prior offender, but not a persistent offender.").

days passed between the appellate court's decision and Carroll's filing. The motion

court granted the State's motion and Carroll appealed. The Missouri Court of Appeals

reversed, finding that the motion court should have held an evidentiary hearing before

dismissing Carroll's amended motion for post-conviction relief. Carroll v. State, 461

S.W.3d 43, 50 (Mo. Ct. App. 2015). The Court of Appeals remanded the case for

additional proceedings consistent with its decision. Id.

On remand, the motion court concluded that Carroll met the timing

requirements of Rule 29.15 and that his October 2010 amended motion was timely.

Carroll requested that the motion court appoint new counsel and permit him to file a

new amended Rule 29.15 motion, arguing that the October 2010 amended motion

was void because it was based on the November 2007 pro se motion. This motion

was denied. [ECF No. 11-15 at 5].

After holding an evidentiary hearing on Carroll's October 2010 amended

motion, the motion court determined that Carroll had not established any entitlement

to post-conviction relief. The court again denied Carroll's request for appointment of

new post-conviction counsel and leave to file a new amended motion. Carroll

appealed the motion court's ruling to the Missouri Court of Appeals which affirmed

the motion court. Carroll v. State, 551 S.W.3d 490 (Mo. Ct. App. 2018).

On November 16, 2018, Carroll filed for habeas corpus relief raising the same

two arguments as in his direct appeal to the Missouri Court of Appeals: (1) that the

state court erred when it failed to *sua sponte* excuse a juror, and (2) that his sentence

4

of 160 years' imprisonment violates the Eighth Amendment because it is disproportionate to his offenses and because it was the result of the trial judge's personal animus.

## LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999).  Findings of fact made by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court may grant habeas relief only if the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  If a state court's decision is not "contrary to" clearly established law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable.'" <u>Williams v. Roper</u>, 695 F.3d 825, 831 (8th Cir. 2012) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011)).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Williams</u>, 529 U.S. at 407-08.

Additionally, an application for a writ of habeas corpus cannot be granted unless the petitioner has exhausted his state court remedies or there is no effective process available in the state. 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a "state prisoner must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). Under Missouri law, habeas petitioners must "bring any claim that a conviction violates the federal or state constitution, including a claim of ineffective assistance of counsel, in a motion for post-conviction relief under rule 29.15." <u>Moore-El v. Luebbers</u>, 446 F.3d 890, 896 (8th Cir. 2006). <u>See also</u> <u>Schleeper v. State</u>, 982 S.W.2d 252, 253 (Mo. banc 1998). Where a petitioner fails to comply with applicable state procedures, the claim is not properly raised before the state court and is procedurally defaulted. <u>Id</u>. If a claim is defaulted, a federal habeas court will consider it only when the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. <u>Id</u>. (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 338-39 (1992)).

## ANALYSIS

In his petition, Carroll asserts two grounds for relief. The state contends that both claims are procedurally defaulted and would also fail on the merits. I agree.

## I.  Procedural Default

Carroll raises the same two claims in his habeas petition as he raised in his appeal to the Missouri Court of Appeals. That court concluded that both claims were waived because defense failed to object on the record at the time that both alleged errors occurred. [ECF No. 11-5 at 12-13, 17]. The Missouri Supreme Court subsequently denied Carroll's application to transfer. [ECF No. 1-1 at 12]. Accordingly, Carroll's claims are procedurally defaulted. Therefore, my inquiry is limited to whether Carroll has made either: (1) a showing of cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation, or (2) a showing of a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

A. Cause and Prejudice

A federal court may hear a habeas petitioner's procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged error. Davila v. Davis, 137 S.Ct. 2058, 2062 (2017). Generally, when a state court determines that an appellant has not met the plain error standard of review, the appellant will also be unable to meet the cause and prejudice standard as a habeas petitioner. Clark v. Bertsch, 780 F.3d 873, 876-77 (8th Cir. 2015). The Missouri

Court of Appeals found that Carroll failed to meet the plain error standard as to either of the constitutional arguments he raised on direct appeal. Therefore, I may properly determine that Carroll is not entitled to an independent determination of either claim. Id.

Carroll does not explicitly raise any arguments to show cause for the procedural default of his habeas claims. However, he does make general arguments alleging ineffective assistance of counsel, citing his trial counsel's failure to raise objections to Juror S's continued involvement in the trial, as well as counsel's failure to call certain witnesses and to impeach the victim with his medical records on cross-examination. He also references his appellate counsel's failure to seek plain error review of the trial judge's remarks before sentencing, as well as counsel's failure to raise prosecutorial misconduct on appeal. [ECF No. 1-1 at 3, No. 11-11 at 104-105, & No. 23 at 11, 15-16].

As to the claims regarding ineffective assistance of appellate counsel, there is no constitutional right to counsel in post-conviction proceedings. Davila, 137 S.Ct. 2058 at 2062. Accordingly, there can be no Sixth Amendment deprivation of that counsel and therefore no cause for procedural default in this case.

As to the claims regarding ineffective assistance of trial counsel, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 486 (1986). So long as a defendant is represented by

counsel whose performance is not constitutionally deficient, "there is no inequity in requiring [the defendant] to bear the risk of attorney error that results in a procedural default." Id. at 488. A petitioner wishing to argue cause for procedural default based on ineffective assistance of counsel must first present the ineffective assistance of counsel claim to the state court for adjudication. Id. at 488-89.

Carroll raised this argument before the Missouri Court of Appeals on direct appeal, as well as before the motion court in the post-conviction Rule 29.15 proceeding. [ECF No. 11-5]. In Carroll's direct appeal, the Missouri Court of Appeals found that the trial court did not err by failing to *sua sponte* excuse Juror S from service. [Id. at 12-13]. The court found that since prospective jurors were never asked about relationships or affiliations with the U.S. Attorney's Office during *voir dire*, there was no cause for excusal of Juror S when he later disclosed the relationship. [Id.]. Thus, there was no mandatory basis for excusing the juror. [Id.].

On collateral review under Rule 29.15 by the motion court, that court found the claim without merit. [ECF No. 11-11 at 102-03]. Since Carroll had raised the main thrust of the claim on direct appeal, the court found he could not attempt to relitigate it by transforming it into an ineffective assistance of counsel claim. [Id.]. Carroll did not raise the argument again in his appeal of the motion court's post-conviction order to the Missouri Court of Appeals.

Having found that Carroll appropriately raised his ineffective assistance of counsel claim in state court, I now analyze whether trial counsel was ineffective

under the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The

<u>Strickland</u> inquiry is two-fold:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment. Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable. Unless a defendant makes both showings, it
> cannot be said that the conviction or death sentence resulted from a
> breakdown in the adversary process that renders the result unreliable.

<u>Id</u>. at 679.

Carroll fails to satisfy either prong of the test. Under the deficiency prong,

there is a "strong presumption that counsel's conduct falls within the 'wide range

of professional assistance.'" <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384 (1986)

(quoting <u>Strickland</u>, 466 U.S at 689). Carroll bears the burden of showing that

"his attorney's representation was unreasonable under prevailing professional

norms and that the challenged action was not sound strategy." <u>Id</u>. at 384 (citing

<u>Strickland</u>, 466 U.S. at 688). Carroll does not support his allegations of

deficiency with any factual or legal support. As the lower court found, there was

no factual basis for disqualifying Juror S. Additionally, the other issues Carroll

raises relating to defense counsel's performance at trial—including counsel's

strategy regarding cross-examination of the victim—were fully addressed at the

post-conviction hearing. [ECF No. 11-16 at 42-67]. The Court of Appeals found

that counsel's behavior was not constitutionally defective. [ECF No. 11-15 at 11-19]. Thus, Carroll's trial counsel was not deficient within the meaning of Strickland.

Furthermore, even if the deficiency of the petitioner's trial counsel is presumed, Carroll has not even attempted to argue that he was prejudiced as a result of counsel's performance. Instead, he relies on State v. Martinelli, 972 S.W.2d 424 (Mo. Ct. App. 1998) and State v. Mayes, 63 S.W.3d 615 (Mo. 2001) to show that Juror S's continued involvement in the case was presumptively prejudicial, such that the State could not overcome the presumption by any affirmative showing. While it is true that both cited cases stand for the proposition that juror nondisclosure is presumed to be prejudicial against a criminal defendant, the Missouri Court of Appeals directly addressed the allegation of juror nondisclosure and found that it was not supported by the facts in the record. [ECF No. 11-5 at 12-13]. That court also addressed Carroll's other ineffective assistance of counsel claims at length and found no Sixth Amendment violations. [ECF No. 11-15 at 11-19]. These factual determinations are presumed correct, and Carroll has not offered clear and convincing evidence to rebut. Nicklasson v. Roper, 491 F.3d 830, 834 (8th Cir. 2007) (citing 28 U.S.C. § 2254(e)(1)).

Accordingly, Carroll is unable to show cause for his procedurally defaulted claims. Since he is unable to show cause, analysis of any possible prejudicial impact due to the merits of his claims is not warranted. Coleman, 501 U.S. at 757.

11

B. Fundamental Miscarriage of Justice

A federal court may adjudicate procedurally defaulted habeas claims that do not meet the cause and prejudice standard if the petitioner can show that such adjudication is necessary to avoid a fundamental miscarriage of justice. See Carrier, 477 U.S. 478, 496 (1986). This exception is "'rare' and [to] be applied only in the 'extraordinary case,'" and is for that reason "explicitly tied…to the petitioner's innocence." Schlup v. Delo, 513 U.S. 298, 299 (1995).

To satisfy the miscarriage of justice standard, the petitioner must make a claim of actual innocence that is both "credible" and "compelling." Id. at 324-25. To be considered "credible," the claim must be supported by "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324. The "new reliable evidence" must establish a new factual basis of innocence, not merely present a different legal argument. Bousley v. United States, 523 U.S. 614, 622 (1998). Factual evidence is only "new" if was unavailable at the time of trial and could not have been produced through an exercise of due diligence. Kidd v. Norman, 651 F.3d 947, 952 (8th Cir. 2011); Lee v. Kemna, 213 F.3d 1037, 1039 (8th Cir. 2000). For the claim to be "compelling," the petitioner must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327.

Carroll argues that the following evidence supports his claim of actual

12

innocence: (1) an Evidence Technician Unit report that was not admitted into evidence; (2) results of medical tests, including DNA, STI, and S.A.F.E. tests, that were either not performed or not admitted into evidence; (3) statements from uncalled defense witnesses, including the victim's boss and doctor; (4) overreliance by the prosecutor on circumstantial evidence and lack of direct evidence; (5) allegedly perjured testimony from the victim; (6) alleged pressure on one juror to vote to convict;[2] (7) Juror S's nondisclosed relationship with an employee of the U.S. Attorney's Office; and (8) the trial judge's pre-sentencing remarks, including his admission of *ex parte* discussions of underlying facts of the case. [ECF No. 1-1 at 1-3 & No. 23 at 5-16]. However, a review of the record shows that even if these allegations are credible, they are not compelling.

The Evidence Technician Unit ("ETU") report that was not admitted does not rise to the level of "critical physical evidence." Schlup, 513 U.S. at 324. Carroll alleges that certain "test results" from that report would have proven his innocence if the jury had been able to review the report. [ECF No. 23 at 5]. However, he does not point to any specific test results in the ETU report that would have established his innocence. He only references the report's lack of photographic evidence of the victim's front door. Carroll contends that the absence of these photographs proves

---

[2] In his petition, Carroll briefly alleged that one of the jurors at his trial "kept crying on the stand after second deliberation after deadlock" and "when passing my table said, they forced her to go along with the verdict." [ECF No. 1-1 at 2]. He did not discuss this allegation further in his reply.

that there was not front door damage, which would call the victim's testimony into question. [Id. at 21]. Nevertheless, given the amount of evidence and testimony corroborating the victim's account, it is unlikely that such information (even if it was verifiable) would have made it more likely than not that any reasonable juror would have had reasonable doubt. Schlup, 513 U.S. at 325.

Any medical testing that was either not performed or not admitted does not rise to the level of "exculpatory scientific evidence." Schlup, 513 U.S. at 324. The absence of sexually transmitted diseases is not exculpatory in a rape case—since not every instance of forcible rape results in transmission of a disease—and is often prohibited evidence in Missouri trial courts. See State v. Ervin, 723 S.W.2d 412 (Mo. Ct. App. 1986). The lack of DNA evidence is similarly not exculpatory. See, e.g., Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996) ("Forensic evidence such as hair, fingerprints, or body fluids are eminently useful when found, but their absence does not necessarily mandate acquittal."). Thus, the fact that an S.A.F.E. kit was never performed on the victim is not exculpatory.

The statements from uncalled witnesses were at issue in the post-conviction proceedings before the motion court and the Missouri Court of Appeals, as were several other strategic decisions made by defense counsel, including his decision not to impeach the victim with medical records. [ECF No. 11-15 at 11-16]. The motion court found, and the Court of Appeals agreed, that Carroll had not overcome the presumption that counsel employed sound trial strategy in choosing not to present

14

these statements and records. Furthermore, Carroll did not demonstrate that he was prejudiced by the omissions. These findings are entitled to deference, and Carroll does not overcome them by citation to clear and convincing evidence. Roper, 491 F.3d 830, 834 (8th Cir. 2007) (citing 28 U.S.C. § 2254(e)(1)).

Although the evidence supporting Carroll's conviction is admittedly circumstantial, the lack of direct evidence in a case is not a compelling claim in support of actual innocence. In Missouri, "circumstantial evidence is afforded the same weight as direct evidence," and a jury may find a defendant guilty based purely on circumstantial evidence. State v. Shinn, 420 S.W.3d 619, 626 (Mo. Ct. App. 2013); Hutchison v. State, 957 S.W.2d 757, 767 (Mo. 1997). The Eighth Circuit has held the same. Hill, 96 F.3d at 1088; United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996). Thus, the lack of direct evidence does not rise to the level of making it more likely than not that any reasonable juror would have reasonable doubt as to Carroll's guilt. See Schlup, 513 U.S. at 325.

The allegation that the prosecutor elicited perjured testimony from the victim at trial is unsupported by anything in the record and is thus not credible.

Likewise, the allegation that one juror was coerced into agreeing to convict is unsupported by anything in the record and is not credible.

As discussed above, the Missouri Court of Appeals determined that there was no basis upon which the trial court was required to *sua sponte* excuse Juror S for his alleged intentional non-disclosure. [ECF No. 11-5 at 12-13]. Lacking a basis for

15

mandatory excusal of that juror, this claim is not credible.

Finally, the trial judge's use of a homophobic slur and his admission of *ex parte* discussions about the facts of the case did not occur until after the jury convicted Carroll. Thus, this claim does not have any relation to Carroll's claim of actual innocence.

Accordingly, the petitioner is unable to demonstrate actual innocence. As a result, Carroll does not meet either the cause and prejudice or the fundamental miscarriage of justice exceptions to the procedural bar of review. Thus, I am barred from any substantive review of Carroll's claims.

## II. Merits

A. <u>Claim I—Juror S Remaining on the Jury</u>

Even if Carroll's claim was not procedurally defaulted, it would fail on the merits because the Missouri Court of Appeals' determination that the trial court did not err in failing to *sua sponte* excuse Juror S was not contrary to or an unreasonable application of clearly established federal law.

In its analysis, the Missouri Court of Appeals concluded:

> Here, we find no error, plain or otherwise. The basis for disqualifying Juror S was not sufficiently investigated at voir dire. …[*N*]o question was asked about whether prospective jurors were related to or knew people in other prosecuting attorney's offices or who worked generally in law enforcement. We note that when the trial court examined Juror S about whether his father's job in the United States attorney's office would have any impact on Juror S's ability to be fair to both Defendant and the State, to deliberate the evidence with the other jurors, and vote his conscience, Juror S unequivocally stated that he could be fair and impartial. Juror S's

16

unequivocal self-assessment of his ability to be fair and impartial was sufficient evidence to support the trial court's decision not to remove him from the jury. Ray, 860 S.W.2d at 334. Moreover, Defendant did not object to Juror S's continued presence on the jury, ask any follow up questions about Juror S's father or his father's job with the United States attorney's office, or ask that an alternate juror be seated in Juror S's place. Thus, because the record establishes that no specific question was asked during voir dire concerning whether the prospective jurors were related to anyone employed by the United States attorney's office, Juror S's initial silence concerning his father's job in that office cannot be deemed an intentional concealment of the truth. Brown, 939 S.W.2d at 884. Accordingly, the trial court did not plainly err in failing to excuse, *sua sponte,* Juror S from the jury.

[ECF No. 11-5 at 12-13].

A review of Supreme Court precedent does not reveal any decision recognizing or creating a doctrine of intentional nondisclosure by a juror in *voir dire*. It does not appear the Supreme Court has ever directly addressed a factual scenario like that presented here. The most similar facts are found in McDonough Power Equip. v. Greenwood, 464 U.S. 548, 555 (1984), wherein a juror failed to provide an honest answer in *voir dire* because he misinterpreted counsel's question. There, the Court held that in order to "obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." Id. at 556.

Here, Juror S did not provide a dishonest answer to any of the questions asked in *voir dire*. As the Missouri Court of Appeals noted, the prosecutor only asked whether any of the prospective jurors knew anyone in the circuit attorney's office in

the City of St. Louis. Juror S was not dishonest in failing to answer that question in the affirmative because his father did not work for that office.

Accordingly, because the Missouri Court of Appeals' determination was not contrary to or an unreasonable application of clearly established federal law, this Court is precluded from granting Carroll relief based on his first claim.

B. Claim II—Sentencing

Carroll's second claim would also fail on the merits because the Missouri Court of Appeals' determination that the sentence of 160-year imprisonment does not violate the Eighth Amendment was not contrary to or an unreasonable application of clearly established federal law.

According to the Missouri Court of Appeals:

> Defendant's claim is without merit. First, Defendant was sentenced to terms of imprisonment within the ranges of punishment for each of the offenses for which he was convicted. Considering the heinous nature of the multiple acts of violence Defendant inflicted on Victim in this case, the gravity of the offenses with which Defendant was charged, and Defendant's status as a prior and persistent offender, we are left with the firm belief that Defendant's sentence was not grossly disproportionate. See Lee, 841 S.W.2d at 654. Furthermore, the fact that the sentences were run consecutively did not render the sentences excessive or cruel and unusual. Mubarak, 163 S.W.3d at 631. Section 558.026 required the trial court to run the sentences for forcible sodomy consecutively to all the other sentences imposed and granted the trial court discretion to run the sentences for robbery, armed criminal action, and burglary consecutively to the other sentences.
>
> Second, although the trial court's remarks at sentencing were an unnecessary commentary on Defendant's incredible testimony at trial, a thorough review of the trial transcript and sentencing transcript leads to the conclusion that the remarks had no bearing on the sentences

imposed. Accordingly, the trial court did not plainly err in sentencing Defendant to a term of 160 years imprisonment.

[ECF No. 11-5 at 16-17].

A review of Supreme Court precedent does not reveal any decision involving a materially indistinguishable set of facts, so the Missouri Court of Appeals decision was not contrary to clearly established federal law. Moreover, under the unreasonable application clause, the court's application of clearly established federal law regarding the gross disproportionality principle was not objectively unreasonable. In Lockyer v. Andrade, 538 U.S. 63, 72 (2003), the Supreme Court acknowledged that there is not "a clear or consistent path for courts to follow" when determining whether a sentence is grossly disproportionate. However, the Court emphasized that "the gross disproportionality principle reserves a constitutional violation for only the extraordinary case." Id. at 77. All of Carroll's sentences were within the statutory range of punishment for each offense. Mo. Rev. Stat. §§ 558.011; 566.060; 569.020; 569.160; 570.030; 571.015. He was determined to be a prior offender. Mo. Rev. Stat. § 558.016. Furthermore, state law required the trial court to run the forcible sodomy sentences consecutively and gave it discretion to run all other sentences consecutively as well. Mo. Rev. Stat. § 558.026. Thus, the application of the gross disproportionality principle to Carroll's cruel and unusual punishment claim by the Missouri Court of Appeals was not objectively unreasonable, and thus does not violate the unreasonable application clause. See Andrade, 538 U.S. at 76.

19

Finally, under the unreasonable determination of the facts clause, I can only grant Carroll's habeas petition if it was unreasonable for the Missouri Court of Appeals to determine that the trial judge's inflammatory remarks, as well as his open admission of *ex parte* discussions about the facts of the case before sentencing, had no bearing on the sentences imposed. Here, I wish to express unequivocal agreement with Mr. Carroll on one point: these statements should not have been made. This language—especially use of the word "fag," which, despite the trial judge's contention to the contrary, was never spoken during cross-examination of the defendant—was unnecessary and shockingly inappropriate.[3] When a judge uses slurs or epithets to disparage someone's race, religion, or sexual orientation on the record, that language certainly harms the individual insulted. It also does lasting damage to the reputation of the judiciary by eroding public confidence in the fairness and impartiality of our system of justice. It is no wonder that Carroll questioned whether the trial judge held some personal prejudice against him and, acting on that prejudice, imposed the lengthy sentence that he did.

However, a state court's factual determination is not unreasonable simply because the federal habeas court would have reached a different conclusion in the first instance. Wood v. Allen, 558 U.S. 290, 301 (2010). Under federal law,

---

[3] Indeed, the Missouri Code of Judicial Conduct makes special mention of epithets and slurs in comment 2 to Rule 2.2-3, which states that use of slurs and epithets constitutes "words or conduct [which] manifest bias or prejudice," and, as such, is prohibited judicial conduct. See Rule 2.2-3(B), 2.2-3 cmt. 2.

mandatory disqualification of any judge of the United States is required if their

impartiality may be questioned. 28 U.S.C. § 455. Additionally, disqualification is

mandatory where the judge has a personal bias or prejudice concerning a party or has

personal knowledge of disputed evidentiary facts concerning the proceeding. Id.

However, this federal law did not apply to the trial court here and Missouri has no

analogous state law. The Missouri Court of Appeals found that "a thorough review of

the trial transcript and sentencing transcript leads to the conclusion that the remarks

had no bearing on the sentences imposed." [ECF No. 11-5 at 17]. This was not an

objectively unreasonable determination of the facts, since the sentence imposed was

within the statutory limits for the crimes of which Carroll was convicted. See

Andrade, 538 U.S. at 76.

## **CONCLUSION**

Both of Carroll's claims are procedurally defaulted and neither the cause and

prejudice standard nor the fundamental miscarriage of justice exception applies. Even

if the claims were not procedurally defaulted, this Court would be unable to grant

Carroll habeas relief under 28 U.S.C. § 2254.

I have considered whether to issue a certificate of appealability in this matter

under 28 U.S.C. § 2253.  To grant such a certificate, I must first find a substantial

showing of the denial of a federal constitutional right.  See Tiedeman v. Benson, 122

F.3d 518, 522 (8th Cir. 1997).  A substantial showing is "a showing that issues are

debatable among reasonable jurists, [that] a court could resolve the issues differently,

or [that] the issues deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)).

Upon a final review of Carroll's claims, I conclude that in light of the evidence presented, the Missouri Court of Appeals may have unreasonably determined that the trial judge's disparaging remarks had no bearing on the 160-year prison sentence that Carroll received. Whether a trial judge's pre-sentencing comments that indicate bias towards a criminal defendant may impermissibly affect the sentence imposed is debatable among reasonable jurists. This is a question of law that the United States Supreme Court has not directly considered.  Another court could resolve this question differently and the issue deserves further review.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Anthony Carroll for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will issue a certificate of appealability in a separate document.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 1st day of October, 2020.

22